This is an appeal from a judgment of the Huron County Court of Common Pleas.
During the summer of 1998, appellant, Chris R. Kiedrowicz, and appellee, Karen R. Kiedrowicz, were going through a divorce. The final hearing on the divorce was held on August 13, 1998. On September 2, 1998, appellee filed, pursuant to R.C.3113.31, a petition for a domestic violence civil protection order. Karen alleged that on the evening of August 28, 1998 Chris "attempted to cause and caused bodily injury to Petitioner, and by the threat of force, placed Petitioner in fear of serious physical harm."
A hearing was held before a magistrate. Much of the testimony presented was in conflict. Karen provided the following recitation of alleged facts. August 27, 1998 was the parties' tenth wedding anniversary. Even though they were divorcing, Chris sent Karen ten red roses and a note stating that he still loved her and that they would be "raising grandchildren together."
On the evening of August 28, 1998, Karen and some of her friends were sitting at a table in a bar. Appellant, who was exercising his companionship and visitation rights pursuant to a temporary court order, came into the bar with the parties' two minor children. Karen walked over and picked up her daughter. Chris came toward her and forcibly grabbed her left forearm and pulled her toward him. At that point, the parties' daughter began crying. Appellee broke away from her husband and attempted to walk away. He again grabbed her left forearm and pulled her close, placing his face against the side of her face. Appellee asked appellant to leave and not to bring the children to the bar. She told him she received his roses and thought he was "psycho." He, after saying "Oh, you think I'm psycho, do you; oh really, you think I'm psycho; * * *", told Karen not to make a scene. Appellee again pulled away and walked toward her friends who told Chris not to touch her. However, appellant again grabbed appellee's arm and pulled her toward him; she broke free and took her daughter outside. Appellant then took his daughter and, after putting both children in the back seat of his vehicle, turned and blew Karen a kiss.
Karen testified that Chris sent her ten more roses on August 29, 1998 with a note saying they would be together for eternity. She said that he had been "stalking" her, especially since the date of the final divorce hearing, by frequently driving, running or bicycling past the marital residence at all times of the day or night. She said that he often made statements, e.g., "judgment day is coming Karen," "God will decide your fate," "we'll be together for eternity," that she believed were threatening. In her opinion, appellant came to the bar on August 28, 1998 for a reason and was angry throughout the incident.
One of appellee's friends corroborated her testimony.
Appellant claimed that a friend from work asked him to meet him at the bar. He stated that when he arrived there, he realized the bar was crowded and not a place for his children. However, according to Chris, Karen came over as soon as they entered the bar and picked up their daughter. He asserted that he never grabbed appellee's arm, but that he just "leaned in" to speak with her because the bar was noisy. Appellant admitted that he still loved his wife and that, pursuant to his religious beliefs, a legal divorce did not affect their marital status. He also testified that he did frequently go past the marital residence and that he was attempting to buy property, including the house across the street from the marital residence, in the subdivision.
Appellant's co-worker testified that she invited appellant to the bar. She stated that she never saw Chris touch Karen. She acknowledged, however, that she was farther away from the couple than the other witness, did admit that she saw appellant "lean in" toward appellee and said she did not watch them the entire time.
On September 9, 1998, the magistrate entered a decision and civil protection order. The decision, which is essentially a form with check-marked boxes, was also signed by the trial court judge. The court ordered appellant not to attempt to harm, threaten or contact Karen Kiedrowicz or to encourage any third party to engage in the prohibited conduct. The decision also contained a provision that modified appellant's visitation and companionship rights and stayed the visitation order and shared parenting plan entered into by agreement in the parties' divorce proceeding for so long as the civil protection order was in effect. The term of the civil protection order was stated as one year.
Appellant filed timely objections, captioned as an "appeal," to the magistrate's decision contending that the decision was against the manifest of the evidence and an abuse of discretion. Appellant also argued that it was error for the court to alter the shared parenting plan agreed to by the parties in the divorce proceeding.
On October 28, 1998, the trial court overruled appellant's objections finding, in material part, that there was evidence in the record to:
 "* * * support a finding that Respondent placed Petitioner by threat of force in fear of imminent serious physical harm. This finding is based on Respondent's actions in entering a public place and grabbing Petitioner by the arm in a threatening manner. The Court takes judicial notice of Case No. DRA 97-891 wherein, because of Respondent's irrational behavior, the Court found it necessary to restrain him from contact with petitioner and imposed supervised visitation."
Appellant failed to ask the court or the magistrate to issue findings of fact and conclusions of law. See Civ.R. 52 and Civ.R. 53(E)(2).
Appellant appeals the trial court's judgment and assigns the following as error in the proceedings below:
 "The Common Pleas Court erred when it took judicial notice of case number DRA-97-891."
 "The Trial Court's finding that appellant engaged in domestic violence, is against the manifest weight of the evidence."
In his first assignment of error, appellant contends that it was error to take judicial notice of an order in his divorce proceedings. He argues that this error was prejudicial because he was unable to prepare a defense or explanation as to why the shared parenting plan/visitation should not be modified. He further asserts that the court took judicial notice of the divorce proceedings in order to justify modification of the shared parenting plan in the civil protection order.
In a case where the court determines that a petitioner's request for a civil protection order should be granted, the court may temporarily allocate parental rights and responsibilities for the care of the minor children of the parties or establish temporary visitation rights. R.C. 3113.31(E)(1)(d). Nevertheless, the court may make these temporary orders only "if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or visitation rights." Id.
In the present case, temporary orders regarding the allocation of parental rights and responsibilities and visitation were entered in the parties' divorce action. In addition, a shared parenting plan was agreed to, but not filed as a judgment. Thus, the magistrate lacked the authority, under R.C.3113.31(E)(1)(d) to enter any temporary orders concerning those issues in the civil protection order. Consequently, the trial court should have sustained appellant's objection to that portion of the magistrate's decision.
Instead, however, the court decided to take judicial notice of its own determination in the divorce proceeding as to the shared parenting plan and visitation. As asserted by appellant, this was error, albeit a technical error. A court may not take judicial notice of proceedings in other cases even in those instances where the cases are between the same parties before the same court. In re: Erin N. (Apr. 12, 1996), Erie App. No. E-95-029, unreported, quoting In re: Marshall (Dec. 18, 1992), Lucas App. No. L-92-090, unreported. See, also,Diversified Mortgage Investors, Inc. v. Bd. of Revision (1982),7 Ohio App.3d 157. The court then overruled appellant's objectionsin toto without finding that the magistrate's decision as to the allocation of parental rights and responsibilities and visitation was in error. For this reason, appellant's first assignment of error as it relates to parental rights and responsibilities is found well-taken.
Appellant's second assignment of error alleges that the trial court's judgment is an abuse of discretion because it is clearly against the manifest weight of the evidence.
The statutory requirement in determining whether to issue a civil protection order pursuant to R.C. 3113.31 is:
 "* * * the occurrence of one or more of the following acts against a family or household member:
 "(a) Attempting to cause or recklessly causing bodily injury;
 "(b) Placing another person by the threat of force in fear of imminent serious physical harm * * *." R.C. 3113.31(A)(1). (Emphasis added.)
The household member seeking the civil protection order must prove domestic violence or threat of domestic violence by a preponderance of the evidence. Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus. Thus, in a case where an appellant asserts that the court's judgment is against the manifest weight of the evidence, we will not reverse the trial court's decision if that judgment is supported by some competent, credible evidence going to the essential elements of the case.C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. Furthermore, on appeal, we presume that the findings of the trial court are correct, because the trial court can view the witnesses and weigh the credibility of the proffered testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
Appellant argues that the trial court's judgment is based expressly on the incident that occurred in the bar on August 28, 1998; therefore, both the lower court and this court are required to focus solely on the evidence related to that incident only. Appellant insists that the evidence offered fails to satisfy the statutory definition of domestic violence.
The trial court determined that appellant's actions on the night of August 28, 1998 "placed Petitioner by threat of force in fear of serious physical harm." Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable. Eichenberger v.Eichenberger (1992), 82 Ohio App.3d 809, 815. The reasonableness of the fear felt by the petitioner is determined with reference to the petitioner's history with the respondent. Id. at 816; Conklev. Wolfe (Nov. 18, 1998), Athens App. No. 98CA2, unreported.
Here, a review of the record reveals that some competent, credible evidence as to the pattern of appellant's behavior toward appellant and his actions on the night in question was offered to establish that appellee's fear of imminent serious harm on August 28, 1998 was reasonable. Therefore, the trial court's judgment is not against the manifest weight of the evidence. Appellant's second assignment of error is found not well-taken.
The judgment of the Huron County Court of Common Pleas is affirmed in all respects excepting Paragraphs Thirteen and Sixteen of the magistrate's decision. Appellant and appellee are ordered to pay, in equal shares, the costs of this appeal.
JUDGMENT AFFIRMED IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
 COURT OF APPEALS OPINIONS, APRIL 9, 1999.